STATE OF NORTH CAROLINA v. LESLEY EUGENE WARREN

No. 116A96

(Filed 8 May 1998)

1. **Constitutional Law § 264 (NCI4th)— first-degree murder—request for counsel for prior offense—Sixth Amendment—offense specific**

   A first-degree murder defendant's Sixth Amendment right to counsel was not violated where he was arrested in High Point on a South Carolina warrant for first-degree murder, taken to Asheville and questioned about a murder there as well as murders in South Carolina and New York, and he first confessed to those murders, then confessed to the murder in High Point of Katherine Johnson which was the subject of this trial. Although defendant had been questioned about the disappearance of the Asheville victim, had requested counsel, and had been represented by counsel at a bond hearing for misdemeanor larceny of the Asheville victim's pocketbook and failure to produce title to a motor vehicle, the Sixth Amendment is offense-specific and had not attached to any of the homicides when defendant was arrested because no adversarial judicial proceedings had been instituted in the murder cases.

2. **Evidence and Witnesses § 1254 (NCI4th)— first-degree murders—Sixth Amendment right to counsel—invoked for prior crime—confession admissible**

   There was no bar to the admission of the statement of a capital first-degree murder defendant under the Sixth Amendment, Article I, Section 23 of the North Carolina Constitution, or N.C.G.S. § 15-4 where defendant was under investigation for several murders; the murder in this case was the last in the sequence and occurred in High Point; defendant had been charged with misdemeanor larceny of the pocketbook of one of the other victims in Asheville; he had requested counsel and had been represented by counsel at a bond hearing for offenses in Asheville; and the confession to all of the murders was made after he had been released on bond and the High Point murder committed. Although the Sixth Amendment right to counsel is offense specific, defendant contends that the murder in High Point is inextricably intertwined with the crime for which the Sixth Amendment right to counsel had attached; however, even assum-

ing that the pocketbook larceny in Asheville was inextricably intertwined with the murder of the Asheville victim so that the confession to that murder was barred, any Sixth Amendment right related only to that murder. Defendant could not have invoked his Sixth Amendment right to counsel as to this murder in High Point because it had not yet been committed when the right to counsel was invoked.

3. **Evidence and Witnesses § 1235 (NCI4th)— first-degree murders—Fifth Amendment right to counsel invoked— break in custody—further interrogation—confession admissible**

A capital first-degree murder defendant's motion to suppress his statement to officers under the Fifth Amendment right to counsel was properly denied where defendant invoked his Fifth Amendment right to counsel on 29 May 1990 during custodial interrogation for a murder in Asheville, he was released from custody on 7 June, the murder in this case occurred in High Point on 15 July 1990, defendant was arrested on 20 July, and he waived his rights and confessed to this murder. The break in custody renders inapplicable the rule in *Edwards v. Arizona*, 451 U.S. 477, regarding police initiated custodial interrogation after a request for counsel.

4. **Criminal Law § 1348 (NCI4th Rev.)— capital sentencing— instructions—1990 murder—life without parole—motion for jury to consider—denied**

The trial court did not err in a capital first-degree murder prosecution by denying defendant's motion to have the jury consider life without the possibility of parole as a sentencing option. The intent of the legislature to apply N.C.G.S. § 15A-2002 prospectively has been acknowledged in previous cases, and retroactive application of the amendment would violate the *ex post facto* prohibition because it increases the punishment for first-degree murder despite defendant's offer to waive this constitutional protection.

5. **Criminal Law §§ 1363, 948 (NCI4th Rev.)— capital sentencing—motion for appropriate relief in prior murder— appointment of counsel—denial not prejudicial**

The trial court did not abuse its discretion by denying a capital first-degree murder defendant's motion for appointment of counsel to prosecute a motion for appropriate relief regarding a

prior conviction for first-degree murder where defendant believed that his guilty plea and prior murder conviction were unreliable and that the State would use that conviction as an aggravating circumstance in this case, but the trial court stated that the appropriate jurisdiction for the motion was the North Carolina Supreme Court since the case was on appeal. Although the trial court had the authority to grant the motion, defendant did not show how the denial of the motion prejudiced him or how use of the prior guilty plea violated his constitutional rights in this case. Moreover, defendant may still file a motion for appointment of counsel to prosecute a motion for appropriate relief.

**6. Jury § 218 (NCI4th)— capital first-degree murder—jury selection—juror excluded—religious opposition to death penalty**

The trial court did not err in a capital prosecution for first-degree murder by excusing a juror for cause based on her religious opposition to the death penalty. Although defendant argues that her exclusion from the jury violated constitutional principles regarding the free exercise of religion, she was excused for her inability to follow the law and the fact that her religion provided the basis of her views does not alter the propriety of her exclusion.

**7. Jury § 218 (NCI4th)— capital first-degree murder—jury selection—juror excluded—religious opposition to death penalty—North Carolina Constitution**

A capital first-degree murder defendant's liberty interest under Article I, section 26 of the North Carolina Constitution was not violated by excusing for cause a juror who was unable to vote for the death penalty for religious reasons. Although Article I, section 26 provides that no person shall be excluded from jury service on account of sex, race, color, religion, or national origin, the juror here was excluded based solely on her inability to perform her lawful duties as a juror.

**8. Jury § 218 (NCI4th)— capital first-degree murder—jury selection—jurors opposed to death penalty on religious grounds—excluded for inability to follow law**

There was no merit to a capital first-degree murder defendant's contention that if *State v. Davis,* 325 N.C. 607, is not overturned, then N.C.G.S. § 15A-2000 is unconstitutional in that it permits jurors opposed to the death penalty for religious reasons

STATE v. WARREN

[348 N.C. 80 (1998)]

to be excluded based on their religious beliefs. The juror here was excluded under *Wainwright v. Witt*, 469 U.S. 412, for views which would substantially impair performance of duties as a juror, and no constitutional provisions were implicated.

**9. Jury § 64 (NCI4th)— first-degree murder—jury selection—judge's comment—no excusals for business reasons—not chilling**

The trial court did not err during jury selection for a capital first-degree murder prosecution by admonishing jurors that no juror would be excused for business reasons. Defendant's argument that the judge's comment had a chilling effect on jurors' responses is not borne out by the record; two potential alternate jurors asked and were excused with consent of counsel after the judge's remarks.

**10. Homicide § 253 (NCI4th)— first-degree murder—sufficiency of evidence—premeditation and deliberation**

There was no error in a capital first-degree murder prosecution in the denial of defendant's motion to dismiss the charge for insufficient evidence of premeditation and deliberation where the State's evidence showed a lack of provocation by the victim, that defendant manually strangled the victim to death, that he crammed her body into the car trunk, that he parked the car in a parking deck, and that he fabricated a story to conceal the murder. These facts permit the inference that defendant acted with premeditation and deliberation.

**11. Criminal Law § 471 (NCI4th Rev.)— capital first-degree murder—defendant's argument—reasonable doubt—moral certainty**

The trial court did not err during a capital prosecution for first-degree murder by sustaining an objection and later objecting *ex mero motu* to defense counsel's attempts in his closing argument to explain proof beyond a reasonable doubt and to his use of a quotation from a jury instruction from *State v. Phillip*, 261 N.C. 263, involving "moral certainty." *Cage v. Louisiana*, 498 U.S. 39, and its progeny are not controlling in this case in that here the objectionable statements were not contained in jury instructions. Defense counsel was informed that any references to "moral certainty" as regards proof of reasonable doubt could not be disassociated from the evidence and, having instructed defense counsel, the judge did not abuse his discretion in sustaining the

prosecutor's objection or by intervening *ex mero motu* in defense counsel's closing argument. Even assuming error, the trial judge correctly instructed the jury on reasonable doubt after closing arguments.

**12. Criminal Law § 433 (NCI4th Rev.)— capital first-degree murder—prosecutor's closing argument—reference to defendant's failure to testify—reference to what defense counsel often do**

The trial court did not err in the closing argument of the guilt phase of a capital first-degree murder prosecution by overruling defendant's objection to the prosecutor's arguments that "You're going to hear a lot from the defendant—well, from the defense counsel, I beg your pardon . . ." and that ". . . lots of times defendants or counsel try to deflect . . . ." The prosecutor's alleged reference to defendant's failure to testify was a *lapsus linguae* which was promptly corrected and could not have affected the outcome of the trial and the reference to what counsel often do accurately anticipated defense counsel's closing argument and was not a disparagement of defense counsel.

**13. Criminal Law § 475 (NCI4th Rev.)— capital first-degree murder—prosecutor's argument—defendant's intent to do something to someone—no error**

The trial court did not err during a capital first-degree murder prosecution by overruling defendant's objection to the prosecutor's argument that defendant was bent on doing something to someone, that it would have been some other young woman if not this victim, and that the evidence showed that defendant set out with a fixed purpose or a premeditation and deliberation from start to finish. The prosecutor's arguments were within the wide latitude counsel are given and were reasonable inferences based on the evidence.

**14. Criminal Law § 472 (NCI4th Rev.)— first-degree murder—strangled victim—prosecutor's argument—premeditation and deliberation—any point prior to death**

There was no prejudicial error in a capital prosecution for first-degree murder where the prosecutor argued that defendant premeditated and deliberated the killing if he intended to kill the victim at any point prior to the victim dying. The evidence was that defendant strangled the victim for several minutes until she was dead and the prosecutor's statement that premeditation and

deliberation can be found at any point prior to the victim dying was an accurate statement of the law. Assuming error, any impropriety was promptly corrected by the prosecutor requiring that the jury find premeditation and deliberation prior to the killing.

## 15. Criminal Law § 454 (NCI4th Rev.)— first-degree murder— prosecutor's argument—fear and emotions of victim

There was no impropriety in a prosecutor's argument in a capital first-degree murder prosecution where the prosecutor asked the jurors to imagine being there as the victim was strangled and asked them whether they could imagine anything more degrading. An argument asking jurors to put themselves in the place of the victims will not be condoned, but arguments asking the jury to imagine the fear and emotions of a victim have been found proper. The prosecutor's argument here was based on the evidence and did not misstate or manipulate the evidence.

## 16. Criminal Law § 439 (NCI4th Rev.)— first-degree murder— prosecutor's argument—defendant's character—argument based on facts in evidence

The closing remarks of a prosecutor in a capital first-degree murder prosecution were properly based on facts in evidence where the prosecutor contended that this defendant was not the average killer and didn't care.

## 17. Criminal Law § 475 (NCI4th Rev.)— first-degree murder— prosecutor's arguments—cumulative effect—no error

There was no error in the cumulative effects of alleged errors in the prosecutor's argument in a capital first-degree murder prosecution.

## 18. Evidence and Witnesses § 1695 (NCI4th)— first-degree murder—photographs of decomposed body—relevant and probative

The trial court did not err in a capital first-degree murder prosecution by denying defendant's motion *in limine* and allowing the admission of seven photographs of the victim's body. The photographs were relevant and had probative value; the first two were used during the testimony of an officer to illustrate the location, position, and condition of the body when it was discovered, and the others illustrated the pathologist's testimony. Although defendant had conceded guilt of second-degree murder and the photographs showed the body in an advanced state of decompo-

STATE v. WARREN

[348 N.C. 80 (1998)]

sition, defendant had pled not guilty to first-degree murder, the State still bore the burden of proving all the elements of first-degree murder, and the condition of the victim's body, the nature of the wound, and evidence that the murder was done in a brutal fashion are circumstances from which premeditation and deliberation can be inferred.

**19. Evidence and Witnesses § 1695 (NCI4th)— first-degree murder—photographs of victim—probative value not outweighed by prejudice**

The trial court did not abuse its discretion in a capital first-degree murder prosecution by admitting seven photographs showing the victim's badly decomposed body where the photographs were relevant and had probative value but defendant argued that the prejudicial effect outweighed the probative value.

**20. Evidence and Witnesses § 1064 (NCI4th)— first-degree murder—concession of second-degree—not a plea—State required to prove elements—instruction on flight—no error**

There was no plain error in a capital first-degree murder prosecution where the jury was instructed on flight. Although defendant argues that he had conceded guilt for second-degree murder and that the only issue was whether there was sufficient evidence of premeditation and deliberation, on which flight has no bearing, defendant had not pled guilty to second-degree murder and only conceded guilt in argument, so that the State was still required to prove each element of the charged offense.

**21. Homicide § 514 (NCI4th)— second-degree murder—instruction on elements—Pattern Jury Instructions—accurate statement of law**

There was no plain error in the trial court's instruction on the elements of second-degree murder where the challenged instruction, taken directly from the Pattern Jury Instructions, was an accurate statement of the law.

**22. Criminal Law § 505 (NCI4th Rev.)— first-degree murder—jury—taking notes—prohibited by court**

There was no error in a capital first-degree murder prosecution where the trial court prohibited the taking of notes by the jury in the absence of an objection by the parties. The 1993

amendment to N.C.G.S. § 15A-1228, which permitted the prohibition on the judge's own motion, became effective on 1 October 1993 and applies to trials begun after that date. Defendant's trial began on 18 March 1996.

**23. Criminal Law § 690 (NCI4th Rev.)— first-degree murder— mitigating circumstances—peremptory instructions—credible and convincing evidence**

The trial court did not err in a capital sentencing proceeding in its peremptory instructions on mitigating circumstances where the jury was told that the mitigating circumstance must be established by a preponderance of the evidence and later that it should so indicate if not persuaded that the facts supporting a circumstance were credible and convincing. A preponderance of the evidence is the correct burden of proof for establishing a mitigating circumstance, but a single instruction may not be viewed in isolation and a jury may reject a mitigating circumstance supported by all of the evidence if the evidence is not credible or convincing. As in *State v. Holden*, 346 N.C. 404, the jury would have applied the credible and convincing requirement to mean that it must believe the evidence to find that the circumstance existed.

**24. Criminal Law § 934 (NCI4th Rev.)— first-degree murder— issues and recommendation form—one mitigating circumstance—omitted language—no plain error**

There was no plain error, and any error was harmless, where the court in a capital sentencing proceeding submitted an issues and recommendation form which stated as to one circumstance "ANSWER _____ One or more of us finds this mitigating," omitting the last three words, "circumstance to exist." Given the court's oral instructions and the other language on the form, there was no reasonable possibility that the omission had an impact upon the jury's verdict.

**25. Criminal Law § 1363 (NCI4th Rev.)— first-degree murder—aggravating circumstances—prior conviction of capital felony—timing of murders and convictions**

The trial court did not err by submitting to the jury the aggravating circumstance that defendant had been previously convicted of another capital felony, N.C.G.S. § 15A-2000(e)(2), where the two prior murders preceded this murder, but the convictions did not. This argument has recently been rejected in connection

with the (e)(3) aggravating circumstance, a previous conviction of a felony involving the use or threat of violence to the person.

**26. Criminal Law § 1363 (NCI4th Rev.)— first-degree murder—aggravating circumstances—prior conviction of capital felony—Pattern Jury Instruction—not the law**

The trial court did not err and the defendant's constitutional rights were not violated in a capital sentencing hearing where the court instructed on the aggravating factor of having been previously convicted of first-degree murder by giving the pattern jury instruction in effect during the sentencing proceeding rather than the version in effect on the date of the offense, which included language that defendant had been convicted of first-degree murder "on or about the alleged date". Although defendant argues that the omission of the clause is a change in the law which increased his punishment and violated the *ex post facto* prohibition, the pattern jury instruction is drafted by a committee of the North Carolina Conference of Superior Court Judges and does not itself have the force or effect of the law. The instruction here was merely altered to conform to the law; the "previously convicted" language in N.C.G.S. § 15A-2000(e)(2) includes capital felonies committed before the events out of which the murder charge arose, even though the conviction came after those events, so long as the conviction precedes the capital sentencing proceeding in which it forms the basis of the aggravating circumstance.

**27. Criminal Law § 1363 (NCI4th Rev.)— first-degree murder—sentencing—prior conviction of capital felony**

The trial court did not provide erroneous instructions to the jury in a capital sentencing proceeding regarding the (e)(2) aggravating circumstance where defense counsel argued in closing that the aggravating circumstance was not available based upon the pattern jury instruction in effect at the date of the offense rather than at trial, the trial court subsequently read to the jury from the instruction in effect at the time of the trial, and the jury requested a copy of the statute and later returned with a question. Although defendant contends that the answer did not require the jury to find that defendant had been previously convicted of first-degree murder, any confusion was most likely caused by defense counsel's reading of the prior pattern jury

instruction and any misunderstanding was clarified by the judge's instructions and answers to the jury's questions. The jury knew that it was required to find that defendant had been previously convicted of first-degree murder in order to find the aggravating circumstance.

### 28. Criminal Law § 1348 (NCI4th Rev.)— capital sentencing— parole eligibility—instruction denied

The trial court did not err in a capital sentencing proceeding by denying defendant's request for an instruction on parole eligibility where defendant contended that the State argued future dangerousness and that defendant would be parole ineligible if a life sentence were imposed in this case because of a prior conviction and death sentence. The prosecution argued that defendant had committed three murders to show that defendant was a serial killer deserving of the death penalty and did not argue future dangerousness.

### 29. Criminal Law § 1338 (NCI4th Rev.)— capital sentencing— photographs of prior murder victims—admissible

The trial court did not err in a capital sentencing proceeding by allowing into evidence postmortem photographs of the victims in defendant's previous first-degree murder convictions. The photographs illustrated the testimony of police detectives and supported the existence of the aggravating circumstance that defendant had been previously convicted of another capital felony. Whether photographic evidence is more probative than prejudicial lies within the discretion of the trial court and defendant failed to show that the court abused its discretion.

### 30. Criminal Law § 472 (NCI4th Rev.)— capital sentencing— reading from judicial opinion—quoting Florida law

The trial court did not err in a capital sentencing proceeding by overruling defendant's objection to the prosecutor's argument quoting from a North Carolina Supreme Court decision which quoted with approval a Florida opinion regarding character analysis of the defendant. Although defendant argued that this was not the law of North Carolina, it has repeatedly been held that the State is entitled to present competent, relevant evidence pertaining to the circumstances of the crime and character of the criminal.

**31. Criminal Law § 439 (NCI4th Rev.)— capital sentencing— prosecutor's argument—defendant a coward**

The trial court did not err in a capital sentencing proceeding by overruling defendant's objection to the prosecutor calling defendant a coward in his closing argument. The prosecutor's comments were connected to evidence which suggested that defendant preyed on those who were weaker than he and, while not complimentary, in context the use of the word was not disparaging.

**32. Criminal Law § 460 (NCI4th Rev.)— capital sentencing— prosecutor's opening argument—reference to prior capital conviction**

There was no gross impropriety requiring intervention *ex mero motu* in a capital sentencing proceeding where the prosecutor commented to the jury in his opening statement that the evidence would show that defendant had been convicted of "capital or first-degree murder" in Asheville and noncapital murder in South Carolina. Although it has been held that it is improper for the jury to have knowledge that a capital defendant has been on death row in the same case, the prosecutor accurately depicted the prior convictions, both parties and the judge believed at the time that the South Carolina conviction would be submitted as an (e)(3) aggravating circumstance although defendant subsequently requested that both convictions be submitted under (e)(2), and the prosecutor never mentioned that defendant was sentenced to death for the Asheville conviction. Merely referring to a conviction for "capital or first-degree murder" does not necessarily lead to the conclusion that a death sentence was imposed.

**33. Criminal Law § 564 (NCI4th Rev.)— capital sentencing— reference to death row—mistrial denied**

The trial court did not err by not declaring a mistrial in a capital sentencing proceeding where defendant's witness testified that defendant was doing as well as one could do on death row. The mention of death row was inadvertently made on direct examination of defendant's witness, was made only once, and was never brought to the attention of the jury. It cannot be said that the comments of defendant's witness constituted a transgression so gross or highly prejudicial that it alone warrants the granting of a mistrial.

**34. Criminal Law § 1402 (NCI4th Rev.)— death penalty—not disproportionate**

A death sentence was not disproportionate where the record fully supports the jury's finding of the aggravating circumstance submitted, there is no indication that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, this case is not substantially similar to any of the cases in which the death sentence was found disproportionate, and it cannot be said as a matter of law that the sentence is disproportionate when compared with other cases roughly similar with respect to the crime and the defendant.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Greeson, J., at the 18 March 1996 Criminal Session of Superior Court, Guilford County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 15 October 1997.

*Michael F. Easley, Attorney General, by Ellen B. Scouten, Special Deputy Attorney General, for the State.*

*John Bryson and Stanley F. Hammer for defendant-appellant.*

PARKER, Justice.

Defendant Lesley Eugene Warren was indicted on 17 September 1990 for the first-degree murder of Katherine Johnson ("victim"). The jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation. Following a capital sentencing proceeding, the jury recommended a sentence of death; and the trial court entered judgment in accordance with that recommendation.

The State's evidence tended to show the following. On 15 July 1990 Terri Quinby attended the Radisson Hotel employees' picnic held at Cedrow Park in High Point, North Carolina, with her two brothers, her sister, and her children and their children. Defendant went with Ms. Quinby and her family to the picnic. Ms. Quinby introduced the victim, whom she knew when the victim worked part-time in the Radisson gift shop, to defendant at the picnic where they played softball, ate, and drank beer.

After the picnic, around 4:00 p.m., many of the Radisson group, including defendant, went to Applebee's. At Applebee's defendant told Ms. Quinby's brother Freddy he would "have her [the victim] by

the end of the night" and that "he would have her [the victim] before the night was over, for us to watch and see." Ms. Quinby and the rest of her family along with defendant and the victim went to the house of Ms. Quinby's sister, Robin, for dinner. The victim rode with defendant on his motorcycle, and Robin drove the victim's car from Applebee's to Robin's house.

At approximately 9:00 p.m. they all went to Ms. Quinby's house. After sitting on the porch for a while, defendant and the victim went for a motorcycle ride. They drove by Ms. Quinby's house around 11:30 p.m. Defendant returned about an hour later to get the victim's car. He said that the victim could not drive it and that they were going to get a room at the Town House Motel.

On the morning of 16 July 1990, defendant was sleeping on Ms. Quinby's couch. He said that he left the victim at the motel and walked back so that she could drive to class that morning. Defendant spent the week at Ms. Quinby's house.

On 20 July 1990 High Point police arrested defendant at the Quinby house on a South Carolina warrant. When he was arrested and searched, the police found a set of keys which defendant claimed were his; the police later discovered that the keys were to the victim's car.

Defendant was transported to Asheville, in Buncombe County, North Carolina, and was questioned about murders in Asheville and South Carolina. Defendant confessed to the victim's murder in High Point and told Asheville police that he had placed the victim's body in the trunk of her car and had parked it in a parking deck near the Radisson. High Point police located the victim's car and found the victim's naked, decaying body in the trunk, with a bra wrapped around her neck. Defendant's fingerprints were found outside the driver's side door, and his right palm print was found on the outside of the trunk. Defendant had further stated that he and the victim had had sex in a soccer field. High Point officers searched the athletic field and found the victim's shoes near an unmown grass embankment.

The autopsy revealed areas of hemorrhage indicating strangulation by pressure to the neck. The pathologist determined that the cause of death was asphyxia due to strangulation. The victim's decomposed body was identified by using dental records.

Defendant presented no evidence at the guilt phase.

Additional facts will be presented as needed to discuss specific issues.

## PRETRIAL ISSUES

By his first assignment of error, defendant contends that his confession was obtained in violation of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. Defendant bases his argument on the following facts.

On 28 May 1990 Asheville Police Department Detective Lambert questioned defendant about the disappearance of Jayme Hurley. Defendant admitted he saw Hurley on 24 May 1990, the day she disappeared, and consented to leaving his van at the Police Department so that it could be searched.

Upon returning on 29 May 1990 to pick up his van, defendant was advised of his *Miranda* 'rights and signed a rights waiver form. He was informed that the police had found a pocketbook in his van which defendant first said belonged to his wife, but Detective Lambert then told defendant that the pocketbook was identified as belonging to Hurley. After this conversation defendant stated that he may need or may want to get an attorney. Despite defendant's request for counsel, the officers decided that because Hurley might still be alive, they would continue the questioning. During the questioning defendant stated that Hurley had died from a cocaine overdose and that defendant had thrown her body into the French Broad River.

Upon conclusion of the questioning, defendant was arrested on an outstanding arrest warrant for failure to produce title to a motor vehicle and for misdemeanor larceny of Hurley's pocketbook. Defendant was represented by Scott Jarvis at the bond hearing on the misdemeanor charges. At this hearing on 7 June 1990, the district attorney anticipated additional charges; but at the time he was not ready to file these charges. The judge reduced defendant's bond, and defendant was released.

On 7 June 1990 defendant went to the Police Department to get his van. Detective Lambert asked for and defendant consented to give blood, hair, and urine samples. After the samples were collected, defendant agreed to return the next day to talk to Detective Lambert about Hurley. Defendant did not return on 8 June 1990; instead, his mother and Keith Cochrane, Mr. Jarvis' investigator, both left messages that Mr. Jarvis wanted to be present for anything further concerning the misdemeanor charges or the Hurley disappearance.

As a result of Detective Lambert's investigation in South Carolina to obtain background information on defendant from his family, Detective Lambert learned that the South Carolina authorities suspected defendant of a homicide in the Spartanburg area. Through the use of a trap and trace device on the phone of defendant's wife, South Carolina officials located defendant in High Point and issued a warrant for his arrest for first-degree murder and kidnapping.

On 20 July 1990 the High Point Police Department was notified that there was an outstanding South Carolina warrant for defendant's arrest. Defendant was arrested at Terri Quinby's house at 2:44 p.m. by High Point police; he was taken to the police station until Asheville police arrived; and about 6:30 p.m., an officer of the Asheville Police Department took him back to Asheville. Although Mr. Cochrane asked Asheville police to notify Mr. Jarvis when defendant arrived in Asheville, he was never contacted. Defendant arrived in Asheville and was interviewed by Detective Lambert at 9:10 p.m. after defendant was advised of and waived his rights without ever invoking his Fifth Amendment right to have counsel present. Detective Lambert questioned defendant about the South Carolina and Asheville homicides as well as another murder for which defendant was implicated in New York. Defendant willingly discussed the murders and confessed to committing all three murders, including the murder of Hurley in Asheville. Then Detective Lambert told defendant he thought there were more killings and that now would be a good time to admit to them. Defendant then confessed to killing Katherine Johnson in High Point—the case *sub judice*—and explained the events leading up to and following her death. The High Point Police Department was informed of these facts, and from this information High Point officers discovered the body of Katherine Johnson in the trunk of her car. At approximately 12:09 a.m. on 21 July 1990, defendant signed a statement confessing to the four murders. Subsequent to that statement defendant willingly discussed the murders with investigators from other agencies.

On the morning of 21 July 1990, an arrest warrant was issued for defendant by a Guilford County magistrate. That afternoon Lieutenant Dunn of the High Point Police Department served the warrant on defendant in Asheville. Defendant told Lieutenant Dunn that he would like to speak with High Point investigators concerning the victim's murder.

On Monday, 23 July 1990, Detectives Grubb and McNeill of the High Point Police Department and Special Agent Bob Padgett with

the State Bureau of Investigation ("SBI") went to Asheville to interview defendant. Defendant was again given the *Miranda* warnings and willingly waived his rights. During this interview someone poked his head in the door and closed the door when defendant made an arm motion at him as if to say "go on and leave us alone." Defendant said, "my lawyer," and continued talking to the officers. This person was later identified as Mr. Cochrane. Defendant never asked to have an attorney present during the interview. At the conclusion of the interview, defendant stated he would be glad to talk to the officers again.

Prior to trial defendant moved to suppress his confession to the Johnson murder on the grounds that his Sixth Amendment and Fifth Amendment rights had been violated. The trial court denied defendant's motion, finding no constitutional violations surrounding his confession to the murder in this case. On appeal defendant assigns error to the trial court's finding; we reject defendant's argument.

[1] The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. CONST. amend. VI. Further, the police may not interrogate a defendant whose Sixth Amendment right has attached unless counsel is present or the defendant expressly waives his right to assistance of counsel. *State v. Nations*, 319 N.C. 318, 324, 354 S.E.2d 510, 513 (1987). The United States Supreme Court has stated that "once this right to counsel has attached and been invoked," any subsequent waiver of this right by a defendant during a police-initiated custodial interrogation is a nullity; thus, any inculpatory statements made by a defendant to police during such interrogation must be suppressed. *Michigan v. Jackson*, 475 U.S. 625, 636, 89 L. Ed. 2d 631, 642 (1986). A defendant's Sixth Amendment right to counsel attaches only when adversary judicial proceedings have been initiated, either "by way of formal charge, preliminary hearing, indictment, information or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689, 32 L. Ed. 2d 411, 417 (1972); *see generally United States v. Gouveia*, 467 U.S. 180, 81 L. Ed. 2d 146 (1984).

However, the Sixth Amendment is offense-specific and "cannot be invoked once for all future prosecutions." *McNeil v. Wisconsin*, 501 U.S. 171, 175, 115 L. Ed. 2d 158, 166-67 (1991). Thus, the holding in *Michigan v. Jackson*, invalidating post-attachment waivers in police-initiated interviews, is likewise offense-specific. *Id.* at 175, 115 L. Ed. 2d at 167.

> The police have an interest . . . in investigating new or additional crimes . . . [in which they may be seeking evidence on] individuals already under indictment. . . . [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities.

*Maine v. Moulton*, 474 U.S. 159, 179-80, 88 L. Ed. 2d 481, 498 (1985). The Court went on to note that "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Id.* at 180 n.16, 88 L. Ed. 2d at 499 n.16. In this case, when defendant was arrested in High Point, his Sixth Amendment right to counsel had not attached to any of the homicides because no adversary judicial proceedings had been instituted in the murder cases. Therefore, we must overrule defendant's assignment of error.

[2] Defendant further contends that, notwithstanding the offense-specific nature of the Sixth Amendment right to counsel, the confession should have been suppressed because the offense in this case is inextricably intertwined with crimes for which the Sixth Amendment right had attached at the time of his confession. While recognizing that some jurisdictions have enunciated a "very closely related crime" exception, this exception has very limited application. *See Bromfield v. Freeman*, 923 F. Supp. 783, 787 (E.D.N.C. 1996) ("where the offense to which the right has attached is a lesser-included offense of the uncharged offense . . . there can only be a single offense for purposes of the Sixth Amendment"), *appeal dismissed*, 121 F.3d 697 (4th Cir. 1997). Even assuming *arguendo* that the misdemeanor pocketbook larceny offense, to which defendant's Sixth Amendment right had attached, was "inextricably intertwined" with the Hurley murder in Asheville such that defendant's confession to the Hurley murder was barred under the holding in *Michigan v. Jackson*, any Sixth Amendment right related only to that murder. Because defendant had yet to commit the Johnson murder in High Point at the time his Sixth Amendment rights attached with respect to the misdemeanor larceny, he could not have invoked his Sixth Amendment right to counsel as to that murder. Accordingly, there is no bar to the admission of defendant's statements in this case. Likewise, we reject defendant's argument that pursuant to Article I, Section 23 of the North Carolina Constitution and N.C.G.S. § 15-4, his state constitutional and statutory rights have been violated.

**[3]** Defendant also argues a Fifth Amendment violation of his right to counsel. The Fifth Amendment of the United States Constitution guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), the United States Supreme Court determined that the prohibition against self-incrimination requires that prior to a custodial interrogation, the alleged defendant must be advised that he has the right to remain silent and the right to the presence of an attorney. *Id.* at 479, 16 L. Ed. 2d at 726. The Court further held that the accused could "knowingly and intelligently waive[] his privilege against self-incrimination and his right to retained or appointed counsel." *Id.* at 475, 16 L. Ed. 2d at 724. However, if he requests counsel, "the interrogation must cease until an attorney is present." *Id.* at 474, 16 L. Ed. 2d at 723.

The question then becomes "whether a reasonable person in [defendant's] position would believe that he had been taken into custody or otherwise deprived of his freedom of action in any significant way." *State v. Davis*, 305 N.C. 400, 410, 290 S.E.2d 574, 580-81 (1982). In this case the trial court found as fact that defendant was in custody during the questioning on 29 May 1990 at the Asheville Police Department and that defendant invoked his Fifth Amendment right to counsel during that interview. The question then is whether defendant's assertion of his Fifth Amendment rights on 29 May 1990 mandates suppression of his confession on 20 July 1990 to the murder of Katherine Johnson on 15 July 1990.

The United States Supreme Court has established that

> when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused . . . having expressed his desire to deal with the police only through counsel[] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386 (1981). Defendant argues that by reinitiating custodial interrogation 20 July 1990, the police violated his Fifth Amendment rights. However, defendant does not challenge the trial court's finding that

there had been a break in custody between defendant's assertion of his rights on 29 May 1990 and his confession on 20 July 1990. Therefore, we must overrule defendant's assignment of error on this issue.

Since *Edwards* the Supreme Court has stated that the rule in *Edwards* is applicable only if there has been no break in custody, *McNeil v. Wisconsin*, 501 U.S. at 177, 115 L. Ed. 2d at 167-68, and we have adopted this clarification of *Edwards*:

> "If police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards."

*State v. Torres*, 330 N.C. 517, 524, 412 S.E.2d 20, 24 (1992) (quoting *McNeil v. Wisconsin*, 501 U.S. at 177, 115 L. Ed. 2d at 167-68); *see McFadden v. Garraghty*, 820 F.2d 654, 661 (4th Cir. 1987) (holding that two breaks in custody served to sever any causal link between the initial unlawful interrogation and the voluntary confessions); *United States v. Skinner*, 667 F.2d 1306, 1309 (9th Cir. 1982) (stating that *Edwards* did not preclude further questioning when defendant was released from custody and had opportunity to contact counsel), *cert. denied*, 463 U.S. 1229, 77 L. Ed. 2d 1410 (1983). Defendant asserted his right to counsel on 29 May 1990; was released from custody on 7 June 1990; and was not in custody again until 20 July 1990 when he was arrested, advised of his rights, and knowingly and intelligently waived them. We hold the "break in custody" makes the rule in *Edwards* inapplicable and defendant's confession to the Johnson murder obtained in the subsequent police-initiated interrogation following his arrest on 20 July 1990 was admissible. Defendant's motion to suppress his confession was properly denied by the trial court.

[4] Defendant next contends that the trial court's denial of his motion to have the jury consider life without the possibility of parole as a sentencing option violated his constitutional rights. We disagree.

Defendant asserts that he was entitled to an instruction that a sentence of life imprisonment "means a sentence of life without parole." At the time defendant committed the murder of Katherine Johnson in 1990, a person serving a life sentence was eligible for parole after twenty years. N.C.G.S. § 15A-1371(a1) (1988). In 1994

the General Assembly repealed this statute and amended N.C.G.S. § 15A-2002 to require the requested instruction for offenses occurring on or after 1 October 1994. This Court has acknowledged the intent of the legislature to apply N.C.G.S. § 15A-2002 prospectively. *State v. Fullwood*, 343 N.C. 725, 741, 472 S.E.2d 883, 891 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 339 (1997).

Further, retroactive application of the amendment would violate the constitutional prohibition of *ex post facto* laws because it increases the punishment for first-degree murder. Defendant recognizes the *ex post facto* problem and offers to waive this constitutional protection. This identical argument was raised and rejected in *State v. Conner*, 345 N.C. 319, 331-32, 480 S.E.2d 626, 631, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 134 (1997), and *State v. Fullwood*, 343 N.C. at 741-42, 472 S.E.2d at 891-92. We see no reason to depart from this sound holding. For the trial court to instruct the jury according to the amended statute would have been improper. Accordingly, the trial court did not err in refusing to do so.

[5] Next, defendant contends that the trial court erred in dismissing defendant's motion for appointment of counsel to prosecute a motion for appropriate relief regarding defendant's prior conviction for first-degree murder in Buncombe County, North Carolina, thereby violating his constitutional rights. Believing that defendant's guilty plea and conviction for the murder of Jayme Hurley in Buncombe County were unreliable and that the State would use that conviction as an aggravating circumstance in this case, defense counsel sought to have counsel appointed to prosecute a motion for appropriate relief in Buncombe County to determine the reliability of the guilty plea and prior conviction prior to having that conviction used as an aggravating circumstance. The trial court denied this pretrial motion stating that since defendant's Buncombe County case was on appeal to this Court, under N.C.G.S. § 15A-1418 the appropriate jurisdiction for the motion was the North Carolina Supreme Court.

While it is true that pursuant to N.C.G.S. § 7A-451(a)(3) the trial court had the authority to grant defendant's motion for appointment of counsel, defendant has not shown how the denial of this motion has prejudiced him. Further, defendant has not shown how the use of the guilty plea and prior conviction in Buncombe County violated his constitutional rights in this case. Moreover, defendant may still file a motion for appointment of counsel to prosecute a motion for appropriate relief. We, therefore, hold that the trial court

did not abuse its discretion by denying defendant's motion for appointment of counsel.

## JURY SELECTION ISSUES

**[6]** Defendant next argues that the trial court erred in excusing for cause juror Alma Larson based on her opposition to the death penalty on religious grounds, thereby denying defendant his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution.

The test for determining when a juror may be excused for cause is whether his views "would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)). The fact that a prospective juror "voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction" is not sufficient. *Witherspoon v. Illinois*, 391 U.S. 510, 522, 20 L. Ed. 2d 776, 784-85 (1968).

Defendant does not contend that Larson in fact could perform her duties as a juror in accordance with her oath. In response to the trial court's inquiry as to whether she would always vote against the death sentence and always for life imprisonment, Larson answered in the affirmative. Instead, just as the defendant in *State v. Davis* argued, defendant here argues that because her opposition to capital punishment was based on the teachings of her religion, her "exclusion from the jury violated constitutional principles regarding the free exercise of religion and the right to serve as a juror regardless of one's religion." *State v. Davis*, 325 N.C. 607, 625, 386 S.E.2d 418, 427 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990). Since Larson was excused based on her "inability to follow the law[, t]he fact that the prospective juror's religion provided the basis for [her] views did not alter the propriety of excluding [her] for cause." *Id.* at 625-26, 386 S.E.2d at 427. We find no compelling reason to depart from *Davis*.

**[7]** In addition to the arguments used in *Davis*, defendant submits that Article I, Section 26 of the North Carolina Constitution creates a liberty interest in defendant having prospective jurors not excused due to their religious beliefs and that to do so would result in a violation of due process. Article I, Section 26 of the North Carolina Constitution provides that "[n]o person shall be excluded from jury

service on account of sex, race, color, religion, or national origin," but as stated above, Larson was excluded (as was the juror in *Davis*) under the *Witt* test based solely on her inability to perform her lawful duties as a juror. We find no merit in this assignment of error.

[8] Defendant next contends that if the ruling in *Davis* is not overturned, then N.C.G.S. § 15A-2000 is unconstitutional in that it permits jurors to be excluded based on their religious beliefs. We likewise find no merit to this assignment of error in that Larson was excused under *Witt*, and for this reason no constitutional provisions were implicated.

[9] Defendant next argues that the trial court committed reversible error by admonishing jurors that no juror would be excused for business reasons, thus limiting free and open responses during jury selections and restricting defendant's ability to exercise peremptory and for cause challenges.

"[T]he trial judge has broad discretion to see that a competent, fair and impartial jury is impaneled and rulings of the trial judge in this regard will not be reversed absent a showing of abuse of discretion." *State v. Johnson*, 298 N.C. 355, 362, 259 S.E.2d 752, 757 (1979). Pursuant to N.C.G.S. § 15A-1212(9) the grounds for challenging a juror for cause include the juror's inability to render a fair and impartial verdict.

The trial court's comment is similar to the one at issue in *Fullwood*. In that case the jurors were warned to "be cautious in what you may say, and do not say, and do not say anything that would tend to taint any other juror." *State v. Fullwood*, 343 N.C. at 734, 472 S.E.2d at 887. The defendant's argument that this instruction tended to inhibit prospective jurors from disclosing prejudicial information was found to have no merit. Similarly, defendant's argument in the present case that the judge's comment had a chilling effect on jurors' responses is not borne out by the record. In fact two potential alternate jurors asked to be and were excused with consent of counsel for business reasons after the judge's remarks. Defendant has failed to show that the trial court abused its discretion or that defendant was prejudiced by the impaneled jury; therefore, we reject defendant's argument on this point.

## GUILT PHASE ISSUES

[10] Defendant next argues that the trial court erred in denying his motion to dismiss the first-degree murder charge. Defendant

asserts that the evidence was insufficient to prove premeditation and deliberation.

This Court has repeatedly stated that when determining the sufficiency of the evidence to support a charged offense, the evidence must be viewed "in the light most favorable to the State, giving the State the benefit of every reasonable inference." *State v. Benson,* 331 N.C. 537, 544, 417 S.E.2d 756, 761 (1992). A defendant's motion to dismiss must be denied if the evidence considered in the light most favorable to the State permits a rational jury to find the existence of each element of the charged crime beyond a reasonable doubt. *See State v. Williams,* 334 N.C. 440, 447, 434 S.E.2d 588, 592 (1993), *sentence vacated on other grounds,* 511 U.S. 1001, 128 L. Ed. 2d 42 (1994).

The test for sufficiency is the same whether the evidence presented is direct or circumstantial or both. *State v. Vause,* 328 N.C. 231, 237, 400 S.E.2d 57, 61 (1991); *State v. Bullard,* 312 N.C. 129, 160, 322 S.E.2d 370, 388 (1984). "Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Stone,* 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988). If the evidence supports that a reasonable inference of defendant's guilt may be drawn from the circumstances, then "it is for the [jurors] to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *State v. Rowland,* 263 N.C. 353, 358, 139 S.E.2d 661, 665 (1965).

Applying the foregoing rules to the evidence presented in this case, we conclude that there was sufficient evidence from which a rational jury could find that defendant killed Katherine Johnson with premeditation and deliberation.

First-degree murder is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Taylor,* 337 N.C. 597, 607, 447 S.E.2d 360, 367 (1994). Premeditation means that the act was thought over beforehand for some length of time, however short; but no particular amount of time is necessary for the mental process of premeditation. *State v. Conner,* 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994). Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by legal provocation or lawful or just cause. *State v. Hamlet,*

312 N.C. 162, 170, 321 S.E.2d 837, 842-43 (1984). In *State v. Taylor*, 337 N.C. 597, 447 S.E.2d 360 (1994), we held that want of provocation on the part of the deceased, the brutality of the murder, and attempts to cover up involvement in the crime are among other circumstances from which premeditation and deliberation can be inferred. *Id.* at 607-08, 447 S.E.2d at 367. In this case the State's evidence showed a lack of provocation by the victim, that defendant manually strangled Katherine Johnson to death, that he crammed her body into the car trunk, that he parked the car in a parking deck, and that he fabricated a story to conceal the murder. These facts permit the inference that defendant acted with premeditation and deliberation, and the trial court properly denied defendant's motion to dismiss.

**[11]** Defendant next assigns error to the trial court's sustaining an objection and later objecting *ex mero motu* to defense counsel's closing argument. We disagree.

During his closing argument defense counsel attempted to explain the meaning of proof beyond a reasonable doubt and quoted a jury instruction used in *State v. Phillip*, 261 N.C. 263, 134 S.E.2d 386, *cert. denied*, 377 U.S. 1003, 12 L. Ed. 2d 1052 (1964). The prosecutor's initial objection was overruled by the trial court. Defense counsel then quoted from *Phillip* as follows:

> MR. BRYSON [defense counsel]: . . . . "A reasonable doubt is a fair and honest doubt based on common sense and reason[] and one that leaves your mind so that you cannot say that you have an abiding conviction to a moral certainty of the defendant's guilt." [*Id.* at 268, 134 S.E.2d at 391.]

Later on, it [*Phillip*] says this:

> "If the jurors are not satisfied to a moral certainty of the defendant's guilt, they have a reasonable doubt." [*Id.* at 269, 134 S.E.2d at 391.]

> MR. KIMEL [the prosecutor]: We object to that.

> THE COURT: Objection sustained to that.

> MR. KIMEL: It's not the law.

> THE COURT: Objection sustained to that.

> MR. KIMEL: Request the jury disregard that, your Honor.

> THE COURT: Well, I sustained the objection. That's the *Cage* case.

MR. BRYSON: I believe that's been approved in *Bryant.*

THE COURT: If you want to take time, we'll look at it.

MR. BRYSON: No, I won't take the time.

THE COURT: All right.

MR. BRYSON: (Continuing) But you must be convinced to a moral certainty of the defendant's guilt, and that is what proof—

MR. KIMEL: Object. That's not the law.

THE COURT: Overruled. Go ahead.

Later in defense counsel's closing argument, he quoted defendant's confession and said:

And does that convince you beyond a reasonable doubt? Are you convinced now to a moral certainty that before he acted, he had—

THE COURT: Objection. I'm going to object to the words "moral certainty."

MR. BRYSON: I think the *Bryant* case says its okay.

THE COURT: You've got to use it with other words. The words "moral certainty" is [sic] objectionable.

Still later in defense counsel's closing, he argued:

Please listen carefully to the instruction. If you follow the law, you'll say well, his statement gives me problems. There's really no real reason not to believe what he's saying. He's confessing to a murder. He's obviously not trying to create a defense here. He's trying to tell as much as he can about the case. He obviously has blacked out at some time so he can't remember for some reason, whether it was drunkenness or whatever. So I'm not sure about those two elements. And because I'm not convinced to a moral certainty—

MR. KIMEL: Object to that, your Honor.

THE COURT: Sustained to moral certainty.

Defendant contends that defense counsel was denied the opportunity to argue the law and the facts to the jury. Attorneys from both sides are generally allowed wide latitude in argument and are entitled to argue the facts along with the relevant law. *State v. Huffstetler*, 312 N.C. 92, 112, 322 S.E.2d 110, 123 (1984), *cert. denied*, 471 U.S. 1009,

85 L. Ed. 2d 169 (1985). Defendant relies on *State v. Bryant*, 337 N.C. 298, 446 S.E.2d 71 (1994), as support for his contention.

In *Cage v. Louisiana*, 498 U.S. 39, 112 L. Ed. 2d 339 (1990), *overruled on other grounds by Estelle v. McGuire*, 502 U.S. 62, 116 L. Ed. 2d 385 (1991), the United States Supreme Court held that a jury instruction which defined reasonable doubt as a "grave uncertainty" or an "actual substantial doubt" suggests a higher degree of doubt than that required for acquittal and that when considered in reference to "moral certainty" rather than evidentiary certainty, a reasonable jury could find the defendant guilty on a degree of proof less than a reasonable doubt. *Id.* at 41, 112 L. Ed. 2d at 342.

In *Victor v. Nebraska*, 511 U.S. 1, 127 L. Ed. 2d 583 (1994), the United States Supreme Court clarified its holding in *Cage*. The *Victor* jury was given the following instruction: "It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge." *Id.* at 7, 127 L. Ed. 2d at 592. The Court approved the jury instruction in *Victor* because it explicitly told the jury that its conclusion must be based on the evidence in the case. *Id.* at 16, 127 L. Ed. 2d at 597. In stating that "the moral certainty language cannot be sequestered from its surrounding," *id.* at 16, 127 L. Ed. 2d at 596, the Court was satisfied when it was used "in conjunction with the abiding conviction language," *id.* at 15, 127 L. Ed. 2d at 596.

This Court has had occasion to examine *Cage* and *Victor* and has applied their holdings. *See State v. Taylor*, 340 N.C. 52, 59, 455 S.E.2d 859, 862-63 (1995); *State v. Bryant*, 337 N.C. at 305-06, 446 S.E.2d at 75. However, *Cage* and its progeny are not controlling in this case in that here the objectionable statements were not contained in jury instructions. *State v. Roseboro*, 344 N.C. 364, 377, 474 S.E.2d 314, 321 (1996). In this case defense counsel was informed that any references to "moral certainty" as regards proof of reasonable doubt could not be disassociated from the evidence. Having instructed defense counsel, the trial judge did not abuse his discretion in sustaining the prosecutor's objection or by intervening *ex mero motu* to defense counsel's closing argument.

Assuming the trial judge did err by sustaining the prosecutor's objection or by intervening *ex mero motu* to defense counsel's closing argument, the trial judge correctly instructed the jury after closing arguments as to reasonable doubt, stating:

STATE v. WARREN

[348 N.C. 80 (1998)]

A reasonable doubt is a doubt based on reason and common sense, arising out of some or all of the evidence that has been presented, or the lack of it or insufficiency of that evidence, as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt.

This instruction is a correct statement of the law. *Id.*; N.C.P.I.—Crim. 101.10 (1974). We find no merit in defendant's argument.

**[12]** Defendant next argues that the trial court committed error by overruling his objections to five comments by the prosecutor during closing argument. Defendant maintains that the first comment impermissibly criticized defendant's exercise of his constitutional right not to testify and further insulted the judicial system by disparaging defense counsel.

Counsel are entitled to wide latitude during jury arguments, but the scope of that latitude is within the discretion of the trial court. *State v. Soyars*, 332 N.C. 47, 60, 418 S.E.2d 480, 487 (1992). A prosecutor in a capital trial may argue all the facts in evidence, the law, and all reasonable inferences drawn therefrom. *State v. McCollum*, 334 N.C. 208, 223, 433 S.E.2d 144, 152 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994); *State v. Syriani*, 333 N.C. 350, 398, 428 S.E.2d 118, 144, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993).

However, "[a] criminal defendant may not be compelled to testify, and any reference by the State regarding his failure to testify is violative of his constitutional right to remain silent." *State v. Baymon*, 336 N.C. 748, 758, 446 S.E.2d 1, 6 (1994) (citing *Griffin v. California*, 380 U.S. 609, 615, 14 L. Ed. 2d 106, 110 (1965)). "[T]he error may be cured by a withdrawal of the remark or by a statement from the court that it was improper, followed by an instruction to the jury not to consider the failure of the accused to offer himself as a witness." *State v. McCall*, 286 N.C. 472, 487, 212 S.E.2d 132, 141 (1975). The failure to give a curative instruction does not require an automatic reversal; instead, this Court must determine whether the error is harmless beyond a reasonable doubt. *State v. Larry*, 345 N.C. 497, 524, 481 S.E.2d 907, 923, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 234 (1997); *see also* N.C.G.S. § 15A-1443(b) (1988); *State v. Baymon*, 336 N.C. at 758, 446 S.E.2d at 6; *State v. Reid*, 334 N.C. 551, 557, 434 S.E.2d 193, 198 (1993).

In this case, during closing argument, the prosecutor said:

Now, this case is about this young lady right here, Katherine Noel Johnson. You're going to hear a lot from the defendant—well, from the defense counsel, I beg your pardon—about Lesley Warren. I contend to you, lots of times defendants or counsel try to deflect—

. . . [Objection overruled.]

. . . —the case from the victim onto the defendant. Let's talk about what the defendant did. Let's talk about how he felt. Let's talk about what he knew.

We conclude that the prosecutor's alleged reference to defendant's failure to testify was a *lapsus linguae,* simply an inadvertent mistake, which was promptly corrected and could not have affected the outcome of the trial. Defendant further argues that the prosecutor's reference to what counsel often do was grossly improper. We conclude that there was no disparagement of defense counsel; instead, the statement accurately anticipated defense counsel's closing argument.

[13] Defendant next contends that the trial court should have sustained his objection to the following comment which was an appeal to public sentiment based on evidence outside the record:

I contend to you it's a case about premeditated and deliberative [sic] murder. From the time he got to town, I contend to you under the evidence, he was bent on doing something to somebody in this town. If it hadn't been, I contend to you under this evidence, Ms. Johnson that he picked up, it would have been another young woman at some other place.

. . . [Objection overruled.]

. . . And the evidence that I contend shows that, that he set out with a fixed purpose or a premeditation and deliberation, it's from start to finish. From the first things he did when he hit town to the last thing he did when he left town.

While counsel are given wide latitude during jury arguments and may draw reasonable inferences from the law and facts in evidence, counsel may not travel outside the record by interjecting facts not included in the evidence and may not place prejudicial matters before the jury. *State v. Syriani,* 333 N.C. at 398, 428 S.E.2d at 144.

The evidence tends to show that upon arriving in High Point defendant checked into a motel under a false name and address.

STATE v. WARREN

[348 N.C. 80 (1998)]

Shortly after meeting the victim, defendant said, "I'm going to have her tonight. Watch. You'll see. I bet you right now that I'll have her by the end of the night." We conclude that the prosecutor did not travel outside the record. His arguments, demonstrating defendant's premeditation and deliberation, were within the wide latitude counsel are properly given and were reasonable inferences based on the evidence.

[14] Next, defendant argues that the prosecutor misstated the law on premeditation and deliberation when he asserted the following:

> The actions in putting the ligature around her neck [were] continuous, and if you find that he had the intent to kill at any time prior to that five or six minutes, then he killed her, first degree murder, period, open and shut, said and done. We contend he had it before he even put this around there. But if you find that while he was strangling the life out of her that he intended to kill her, at any point prior to her dying, he's guilty—
>
> MR. BRYSON: Object.
>
> MR. KIMEL: —of premeditated and deliberative [sic] murder under this act.
>
> The Court: Overruled.
>
> MR. KIMEL: (Continuing) Any time prior to the killing. Why else would he strangle her?

As previously stated premeditation means that defendant contemplated killing for some period, no matter how short a period of time, before he acted. *State v. Williams*, 334 N.C. at 447, 434 S.E.2d at 592. Deliberation means defendant acted "in a cool state of blood," not under the influence of any violent passion suddenly aroused by some lawful or just cause or legal provocation. *Id.* Based on the evidence presented, defendant strangled the victim for several minutes until she was dead; thus, the prosecutor's statement that premeditation and deliberation can be found "at any point prior to her dying" was an accurate statement of the law. Assuming error, *arguendo*, any impropriety in the argument was promptly corrected by the prosecutor's requiring that the jury find premeditation and deliberation "prior to the killing."

[15] Defendant also contends that the prosecutor inappropriately requested that the jurors put themselves in place of the victim. The prosecutor argued during closing argument:

STATE v. WARREN

[348 N.C. 80 (1998)]

It would make me nervous if somebody was choking me to death. They have irregular heartbeat. They would lose control—and this is so sad—they would lose control of their bodily functions. That is just so sad, because it is so violently degrading to the person. Can you imagine being there—

[Objection sustained. Jurors instructed to disregard statement about "being there."]

. . . Can you imagine how she must have felt?

. . . [Objection overruled.]

. . . Can you know how she must have felt as she was sitting there, losing control—

. . . [Objection overruled.]

. . . of her bodily functions to the point of where they saw the fecal matter on her body in the car? Can you imagine anything more degrading than being killed to the point that you lose control over your own bowels? That's what he did to her.

In *McCollum* this Court held that we will not condone an argument asking jurors to put themselves in place of the victims. *State v. McCollum*, 334 N.C. at 224, 433 S.E.2d at 152. However, this Court has repeatedly found no impropriety when the prosecutor asks the jury to imagine the fear and emotions of a victim. *State v. Bond*, 345 N.C. 1, 38, 478 S.E.2d 163, 183 (1996), *cert. denied*, —— U.S. ——, 138 L. Ed. 2d 1022 (1997); *State v. Campbell*, 340 N.C. 612, 636, 460 S.E.2d 144, 157 (1995), *cert. denied*, 516 U.S. 1128, 133 L. Ed. 2d 871 (1996); *State v. Gregory*, 340 N.C. 365, 426, 459 S.E.2d 638, 673 (1995), *cert. denied*, 517 U.S. 1108, 134 L. Ed. 2d 478 (1996). Since the prosecutor's argument was based on the evidence and did not misstate or manipulate the evidence, we hold that the argument was not improper.

[16] Finally, defendant asserts that the prosecutor went beyond the evidence by arguing:

They want you to talk, I contend, in generalities and abstracts. Let's talk—you know, about the general case. Let's talk about the average case. She's not average. And quite frankly, Mr. Warren, I contend to you, is not average. He's not your average killer.

. . . [Objection overruled.]

. . . He, under this evidence, is a homicidal person, under this evidence. He doesn't care.

. . . [Objection overruled.]

. . . I contend to you. He didn't care.

Defendant contends these derogatory remarks about defendant's character were not based on the facts in evidence. In *State v. Britt*, 288 N.C. 699, 220 S.E.2d 283 (1975), this Court concluded that the prosecutor "should refrain from characterizations of defendant which are calculated to prejudice him in the eyes of the jury when there is no evidence from which such characterizations may legitimately be inferred." *Id.* at 712, 220 S.E.2d at 291. However, we have also stated that the prosecutor may argue inferences reasonably drawn from the evidence. *State v. Huffstetler*, 312 N.C. at 112, 322 S.E.2d at 123. After reading the prosecutor's arguments in context, we hold that they were properly based on the facts in evidence.

[17] We have considered the separate as well as the cumulative effects of the prosecutor's comments to which defendant objects and find them to be without merit.

[18] Defendant next contends that the trial court erred in denying his motion *in limine* and allowing the admission of seven photographs of the victim's body. Defendant argues that the photographs had no probative value. The bases of this argument are that defendant allegedly conceded his guilt to second-degree murder and that the photographs show the victim's body in an advanced state of decomposition. The photographs, therefore, did not have a tendency to prove the murder was premeditated and deliberate or committed with a specific intent to kill. Alternatively, defendant argues that the photographs should be excluded because any probative value is outweighed by the unfairly prejudicial effect. We find neither of these arguments to have merit.

As a general rule, gory or gruesome photographs have been held admissible so long as they are used for illustrative purposes and are not introduced solely to arouse the passions of the jury. *See State v. Skipper*, 337 N.C. 1, 35, 446 S.E.2d 252, 270 (1994), *cert. denied*, 513 U.S. 1134, 130 L. Ed. 2d 895 (1995); *State v. Williams*, 334 N.C. at 460, 434 S.E.2d at 600.

In this case defendant pled not guilty to the charge of first-degree murder. Although defendant consented for his counsel to concede

guilt of second-degree murder in closing argument, the State still bore the burden of proving all the elements of first-degree murder including premeditation and deliberation. *See State v. Skipper,* 337 N.C. at 35, 446 S.E.2d at 271. The condition of the victim's body, the nature of the wounds, and evidence that the murder was done in a brutal fashion are circumstances from which premeditation and deliberation can be inferred. *See State v. Gladden,* 315 N.C. 398, 431, 340 S.E.2d 673, 693, *cert. denied,* 479 U.S. 871, 93 L. Ed. 2d 166 (1986).

The State introduced into evidence seven photographs of the victim. Two of the seven photographs at issue depict the remains of the victim in the car trunk, whereas the remaining five are photographs of the autopsy. The first two photographs were used during the testimony of a police officer to illustrate the location, position, and condition of the victim's body when it was discovered in the trunk of her car. The other photographs helped to illustrate the pathologist's testimony concerning the cause of death and depicted the body's appearance before the autopsy, which included the ligature marks, bruises, and discoloration. We conclude that the photographs were relevant and had probative value.

**[19]** Concluding that the photographs were relevant and probative, we now turn to defendant's argument that the unfairly prejudicial effect of the photographs outweighed the probative value. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (1986). Whether to exclude evidence under Rule 403 of the North Carolina Rules of Evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *See State v. Williams,* 334 N.C. at 460, 434 S.E.2d at 600; *State v. Hennis,* 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis,* 323 N.C. at 285, 372 S.E.2d at 527.

Having reviewed the photographs and determined that they were relevant and probative, that they assisted in illustrating the testimony of the police officer and pathologist, and that they could contribute to the finding of premeditation and deliberation, we conclude that the trial court did not abuse its discretion in admitting the photographs. This assignment of error is overruled.

[20] In defendant's next assignment of error, he argues that the trial court erred in its instruction to the jury as to flight. The court instructed the jury as follows:

> Now the State contends that the defendant fled, and evidence of flight may be considered by you, together with all the other facts and circumstances in this case, in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of this circumstance is not sufficient in itself to establish the defendant's guilt. Further, this circumstance has no bearing on the question of whether the defendant acted with premeditation and deliberation. Therefore, it is not to be considered by you as evidence of premeditation and deliberation.

While defendant does not contest the existence of flight in this case, defendant does contend that the jury should not have been instructed regarding flight. Defendant's argument is that because he conceded guilt for second-degree murder, the only issue for the jury to decide was whether there was sufficient evidence of premeditation and deliberation to find that defendant was guilty of first-degree murder, an issue on which flight has no bearing. As discussed previously defendant did not plead guilty to second-degree murder, but merely consented to concede guilt for that offense in argument to the jury; thus, the State was still required to prove each element of the charged offense.

Further, defendant failed to object to the above jury instruction at trial. Hence, as to this assignment of error, he is entitled to review only under the plain error rule. "In order to rise to the level of plain error, the error in the trial court's instructions must be so fundamental that (i) absent the error, the jury probably would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected." *State v. Holden*, 346 N.C. 404, 435, 488 S.E.2d 514, 531 (1997).

Defendant also asserts that evidence of and instruction on flight violate constitutional rights. This argument has repeatedly been made to this Court, and we see no reason to abrogate application of the flight instruction. *State v. Gray*, 347 N.C. 143, 186, 491 S.E.2d 538, 558 (1997); *see also State v. Norwood*, 344 N.C. 511, 534-35, 476 S.E.2d 349, 359-60 (1996), *cert. denied*, —— U.S. ——, 137 L. Ed. 2d 500 (1997); *State v. Jefferies*, 333 N.C. 501, 510-11, 428 S.E.2d 150, 155 (1993).

**STATE v. WARREN**

[348 N.C. 80 (1998)]

**[21]** Defendant next challenges the trial court's jury instruction on the elements of second-degree murder. Defendant did not object to the instruction at trial; hence, any review must be under the plain error rule as noted above. We find no merit in defendant's argument. "Suffice it to say that the challenged instruction, taken directly from North Carolina Pattern Jury Instructions—Criminal [206.10], is an accurate statement of the law[; thus, w]e decline defendant's invitation to consider the challenged instruction." *State v. Sanders*, 303 N.C. 608, 620, 281 S.E.2d 7, 14, *cert. denied*, 454 U.S. 973, 70 L. Ed. 2d 392 (1981).

**[22]** Defendant next assigns error to the trial court's comments to the jury regarding the taking of notes. Defendant asserts that the trial judge had no authority to prohibit jurors from taking notes in the absence of an objection by the parties. Defendant argues that the version of N.C.G.S. § 15A-1228 in effect at the time the crime was committed in 1990 should apply.

The former version of the statute provided as follows: "Jurors may make notes and take them into the jury room during deliberations. Upon objection of any party, the judge must instruct the jurors that notes may not be taken." N.C.G.S. § 15A-1228 (1988). In 1993 the statute was amended to read: "Except where the judge, on the judge's own motion or the motion of any party, directs otherwise, jurors may make notes and take them into the jury room during their deliberations." N.C.G.S. § 15A-1228 (1996). This act became effective 1 October 1993 and applies to trials begun on or after that date. Act of July 23, 1993, ch. 498, sec. 2, 1993 N.C. Sess. Laws 1962, 1963. The General Assembly explicitly stated that the amended statute enacted in 1993 is applicable to defendant's trial, which began on 18 March 1996. Accordingly, we find no merit to this assignment of error.

SENTENCING PROCEEDING ISSUES

**[23]** Defendant next asserts that the trial court's peremptory instructions on mitigating circumstances erroneously imposed a higher burden of proof on defendant by requiring the jury to find the evidence supporting the circumstances to be "credible or convincing."

The jury was given the following instruction regarding mitigating circumstances:

Now, the defendant has the burden of persuading you that a given mitigating circumstance exists. The existence of any mitigating circumstance must be established by a preponderance of

the evidence, that is, the evidence taken as a whole must satisfy you—not beyond a reasonable doubt but simply satisfy you—that any mitigating circumstance exists. Now, if the evidence satisfies any of you that a mitigating circumstance exists, you would indicate that finding on the Issues and Recommendation form. A juror may find . . . any mitigating circumstance by a preponderance of the evidence whether or not that circumstance was found to exist by all jurors. In any event, you would move on to consider the other mitigating circumstances and continue in like manner until you have considered all the mitigating circumstances listed on the form and any others which you deem to have mitigating value.

The court then gave the following instruction, repeated in substantially the same form, as to each of the mitigating circumstances:

As I have said, the defendant has the burden of establishing this mitigating circumstance by the preponderance of the evidence.

Accordingly, as to this mitigating circumstance[], I charge that if one or more of you find the facts to be as all the evidence tends to show, you will answer "Yes" as to Mitigating Circumstance No. 2 on the Issues and Recommendation form. However, if none of you finds this circumstance to exist because the defendant has not persuaded you by a preponderance of the evidence that the facts supporting this circumstance are credible or convincing, you would so indicate by having your foreman write "No" beside this issue on the Issues and Recommendation form.

A "preponderance of the evidence" is the correct burden of proof for establishing that a mitigating circumstance exists. *See, e.g., State v. Payne,* 337 N.C. 505, 531, 448 S.E.2d 93, 108 (1994), *cert. denied,* 514 U.S. 1038, 131 L. Ed. 2d 292 (1995); *State v. Moore,* 335 N.C. 567, 610, 440 S.E.2d 797, 821-22, *cert. denied,* 513 U.S. 898, 130 L. Ed. 2d 174 (1994); *State v. Price,* 326 N.C. 56, 94, 388 S.E.2d 84, 106, *sentence vacated on other grounds,* 498 U.S. 802, 112 L. Ed. 2d 7 (1990). The trial court properly instructed the jury on this burden; however, defendant contends that by forcing the jury to also find the facts to be "credible or convincing," a higher burden was imposed on the defense. A single jury instruction may not be viewed in isolation, but rather the instructions should be considered in their entirety. *State v. Hartman,* 344 N.C. 445, 467, 476 S.E.2d 328, 340 (1996), *cert. denied,*

**STATE v. WARREN**

[348 N.C. 80 (1998)]

—— U.S. ——, 137 L. Ed. 2d 708 (1997). A jury may reject a mitigating circumstance notwithstanding the fact that all the evidence supports its existence if the jury does not find the evidence credible or convincing. *State v. Rouse*, 339 N.C. 59, 107, 451 S.E.2d 543, 570 (1994), *cert. denied*, 516 U.S. 832, 133 L. Ed. 2d 60 (1995).

This Court recently addressed this issue in *State v. Holden*, 346 N.C. 404, 488 S.E.2d 514, holding contrary to defendant's position. As in this case, the jury in *Holden* was repeatedly instructed that defendant's burden of proof was a preponderance of the evidence. The peremptory instruction in *Holden* required that the jury find the evidence to be "credible and convincing" in order to conclude that the mitigating circumstance existed. In upholding the peremptory instruction, this Court stated:

> In the context of the entire charge, we are satisfied the jury would have applied the "credible and convincing" requirement . . . to mean that it must believe the evidence to find that the circumstances existed and that it could reject the circumstance if it did not find the evidence to be credible or convincing.

*State v.* Holden, 346 N.C. at 439, 488 S.E.2d at 533. This assignment of error is overruled.

**[24]** In his next assignment of error, defendant argues that an omission in the issues and recommendation form submitted to the jury violated his constitutional rights. The trial court submitted an issues and recommendation form which set forth the statutory mitigating circumstance pursuant to N.C.G.S. § 15A-2000(f)(6):

> (2) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired.

> ANSWER _____ One or more of us finds this mitigating

The form inadvertently omitted the last three words, "circumstance to exist." Defendant argues that the failure to include these three words permitted the jury to find that a statutory mitigating circumstance existed, but had no mitigating value.

We note that defendant failed to object or call to the attention of the trial court the omission of the words "circumstance to exist." In fact, the trial court asked if the issues and recommendation form was correct; and defense counsel responded that it was. Review is, there-

fore, limited to plain error. In order to constitute plain error, the error must be "so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993). Further, " '[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.' " *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378 (1983) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 52 L. Ed. 2d 203, 212 (1977)) (alteration in original).

Assuming *arguendo* that the trial court erred by omitting the words "circumstance to exist" from the issues and recommendation form and that the error was of constitutional dimension, we hold it was harmless beyond a reasonable doubt. In *State v. Jennings*, 333 N.C. 579, 430 S.E.2d 188, *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993), the trial court submitted an issues and recommendation form that omitted part of the statutory language of one aggravating circumstance. *Id.* at 617, 430 S.E.2d at 207. In order for the jury to find that the aggravating circumstance in N.C.G.S. § 15A-2000(e)(5) was present in that case, it had to conclude that "[t]he capital felony was committed while the defendant was engaged . . . in the commission of, or an attempt to commit . . . a sex offense." *Id.* at 616, 430 S.E.2d at 207 (second and third alterations in original). The trial judge gave an accurate oral instruction to the jury that a sexual offense involves penetration of the victim's anus by force or by the threat of force; however, the written list given to the jury would have allowed it to find that the aggravating circumstance existed simply by concluding that "the murder was committed while the defendant was engaged in the commission of or while attempting the penetration of the anus with an object" and not necessarily require it to find that a sexual offense was involved. *Id.* at 617, 430 S.E.2d at 207. In discerning no plain error, this Court noted that the trial court twice instructed the jury that force or threat of force must be present in order to affirmatively answer the question on the form and that the evidence presented no issue as to the use of force. *Id.* at 618, 430 S.E.2d at 208; *see also State v. Holden*, 346 N.C. at 436, 488 S.E.2d at 531 (no plain error where evidence supported N.C.G.S. § 15A-2000(e)(3) aggravating circumstance even though the words "or threat" were omitted from issues and recommendation form). *But see State v. Cummings*, 326 N.C. 298, 324-25, 389 S.E.2d 66, 80-81 (1990) (new sentencing hearing granted when nonstatutory mitigating circumstances not listed in writing after defendant made a written request).

**STATE v. WARREN**

[348 N.C. 80 (1998)]

In the present case the trial court, after explaining the meaning of capacity to appreciate the criminality of one's conduct and the capacity to conform one's conduct to law, instructed the jury as follows:

Now, you would find this mitigating circumstance if you find, as all the evidence tends to show, that the defendant suffered from schizoid, anti-social substance abuse, and Intermittent Explosive disorders, and that this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

As I have said, the defendant has the burden of establishing this mitigating circumstance by the preponderance of the evidence.

Accordingly, as to this mitigating circumstance, I charge that if one or more of you find the facts to be as all the evidence tends to show, you will answer "Yes" as to mitigating circumstance No. 2 on the Issues and Recommendation form. However, if none of you finds this circumstance to exist because the defendant has not persuaded you by a preponderance of the evidence that the facts supporting this circumstance are credible or convincing, you would so indicate by having your foreman write "No" beside this issue on the Issues and Recommendation form.

We conclude that the trial court properly instructed the jury that it must answer affirmatively as to the mitigating circumstance at issue if one or more of the jurors found that the circumstance existed. We further conclude that the evidence to support this mitigating circumstance, though uncontroverted, was not overwhelming or unquestionably credible. The failure of any juror to find the mitigating circumstance is not necessarily indicative that the jury misapprehended the instruction. Furthermore, Issue Two on the form read: "Do you find from the evidence the existence of one or more of the following mitigating circumstances?" Then follow the two statutory mitigating circumstances, one of which the jury found. When the jurors reached the nonstatutory mitigating circumstances, the form contained additional language requiring that they determine if the circumstance had mitigating value.

Given the court's oral instructions and the language on the form, we conclude there was no reasonable probability that the omission of the words "circumstance to exist" had impact upon the jury's verdict. Accordingly, any error was harmless beyond a reasonable doubt; and this assignment of error is overruled.

**[25]** Defendant next contends that the trial court improperly submitted the (e)(2) aggravating circumstance to the jury in that he had not been *convicted* of a capital felony at the time of the murder in this case. N.C.G.S. § 15A-2000(e)(2) allows a jury to consider as an aggravating circumstance whether "defendant had been previously convicted of another capital felony." Defendant argues that this aggravating circumstance cannot be introduced because although the *conduct* (two prior first-degree murders) preceded the murder in this case, the *convictions* did not.

Defendant concedes that this Court has recently rejected this argument in connection with the (e)(3) aggravating circumstance. *See, e.g., State v. Warren*, 347 N.C. 309, 320, 492 S.E.2d 609, 615 (1997); *State v. Burke*, 343 N.C. 129, 157-59, 469 S.E.2d 901, 915-16, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 409 (1996); *State v. Lyons*, 343 N.C. 1, 22, 468 S.E.2d 204, 214, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 167 (1996). Using language strikingly similar to the (e)(2) aggravating circumstance, N.C.G.S. § 15A-2000(e)(3) provides that one of the aggravating circumstances which may justify a death sentence is the fact that the "defendant had been previously convicted of a felony involving the use or threat of violence to the person."

Finding no distinction between these two aggravating circumstances, we hold that the "previously convicted" language in N.C.G.S. § 15A-2000(e)(2) includes capital felonies " '*conducted* prior to the events out of which the charge of murder arose,' even when the *conviction* came after those events, provided the conviction occurs before the capital sentencing proceeding in which it is used as the basis of the" (e)(2) aggravating circumstance. *State v. Warren*, 347 N.C. at 320, 492 S.E.2d at 615 (quoting *State v. Lyons*, 343 N.C. at 22, 468 S.E.2d at 214 (emphasis added)). Defendant *committed* the murders which supported the (e)(2) aggravating circumstance *before* he murdered the victim in this case and was convicted for those murders prior to this capital sentencing proceeding; therefore, the trial court properly submitted the (e)(2) aggravating circumstance for the jury's consideration. Thus, we find no merit to this assignment of error.

**[26]** In his next assignment of error, defendant argues that the trial court erroneously used a pattern jury instruction which omitted the words "on or about the alleged date," thus constituting an *ex post facto* violation under both the United States and North Carolina Constitutions. Defendant contends that the jury should have been given the pattern jury instruction in effect at the time of the offense

and not the instruction in effect at the time of his trial, thus entitling defendant to a life sentence since the prior instruction would not have allowed the jury to find the existence of the only aggravating circumstance submitted, N.C.G.S. § 15A-2000(e)(2).

On the date of the charged offense, 15 July 1990, the pattern jury instruction for N.C.G.S. § 15A-2000(e)(2) read, in pertinent part, as follows: "If you find from the evidence beyond a reasonable doubt that *on or about the alleged date,* the defendant had been convicted of [first-degree murder], and that he killed the victim after he committed [that first-degree murder] you would find this aggravating circumstance . . . ." N.C.P.I.—Crim. 150.10 (repl. Nov. 1988) (emphasis added). The version in effect during defendant's capital sentencing proceeding, which was read verbatim, provides, in pertinent part: "If you find from the evidence beyond a reasonable doubt that the defendant had been convicted of first degree murder, and that he killed the victim after he committed that first degree murder you would find this aggravating circumstance . . . ." N.C.P.I.—Crim. 150.10 (repl. Apr. 1995). Defendant argues that the omission of the clause "on or about the alleged date" is a change in the law which increased his punishment and violated the constitutional prohibition against *ex post facto* laws. We do not agree.

Initially, we note that in defendant's previous assignment of error, we held that the "previously convicted" language in N.C.G.S. § 15A-2000(e)(2) includes capital felonies committed before the events out of which the murder charge arose, even though the conviction came after those events, so long as the conviction precedes the capital sentencing proceeding in which it forms the basis of the (e)(2) aggravating circumstance. With this as a foundation, it would be improper to restrict the jury's ability to find the (e)(2) aggravating circumstance only to those situations in which the *conviction* for the prior murder predates the events which gave rise to the charge of murder. Therefore, the *law* mandates that the jury find the (e)(2) aggravating circumstance in defendant's case because, as previously discussed, the conduct constituting his prior capital convictions came before the murder of the victim in this case.

We further note that this was the state of the *law* at the date of the offense and that since the date of the offense, the *law,* as applicable to defendant, has not changed, despite the fact that the pattern jury instruction has. The pattern jury instruction, which has neither the force nor the effect of law, was merely altered to conform to the

law. Since there has been no modification in the law regarding N.C.G.S. § 15A-2000(e)(2), there cannot be an *ex post facto* violation. Accordingly, we find no merit to this assignment of error.

Defendant next argues that the trial court's submission of the (e)(2) aggravating circumstance, where the pattern jury instruction was changed between the date of the charged offense and the sentencing proceeding, violated defendant's rights under the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 19 and 27 of the North Carolina Constitution.

The pattern jury instructions are drafted by a committee of the North Carolina Conference of Superior Court Judges and, as previously mentioned, do not in themselves have the force of the law. As such the fact that the instruction concerning N.C.G.S. § 15A-2000(e)(2) was altered has no bearing on the applicable law and certainly does not create a substantive change in the law. Defendant's argument that the alteration by the committee violated the Separation of Powers Clause of the North Carolina Constitution is frivolous.

Further, defendant contends that the modification in the pattern jury instruction was the sole reason he received the death penalty, thus rendering the application of the aggravating circumstance arbitrary and capricious under both the federal and state Constitutions. Again, defendant's contention is flawed in that he presumes that the pattern jury instruction is the law, which it is not. This assignment of error is overruled.

[27] Defendant's final assignment of error regarding N.C.G.S. § 15A-2000(e)(2) is that the trial court provided erroneous instructions to the jury regarding this aggravating circumstance. In prior assignments of error, defendant contended that the 1995 pattern jury instruction should not have been given; here, defendant contends that the 1995 instruction was not given properly.

In his closing argument to the jury during the sentencing proceeding, defense counsel argued that the aggravating circumstance submitted, N.C.G.S. § 15A-2000(e)(2), was not applicable based upon the pattern jury instruction in effect at the date of the offense. The trial court subsequently read to the jury from the 1995 pattern jury instruction, which required the jury to find the aggravating circumstance if it found that "defendant had been convicted of first degree murder, and that he killed the victim after he committed that first

degree murder." Defendant argues that the trial judge incorrectly instructed the jury, allowing it to find the aggravating circumstance without finding that defendant had been previously convicted of first-degree murder.

After ten minutes of deliberation, the jury requested a copy of the statute the judge read concerning the (e)(2) aggravating circumstance. The judge had not previously read from the statute, instead he had read the pattern jury instruction; however, he called the jury back in, read the statute, gave the jury a copy of his instructions, and repeated the instruction regarding (e)(2). Less than an hour later, the jury submitted the following question:

> The third sentence, does the word "and" in that sentence indicate that the two parts of the sentence are dependent upon each other, or can they be considered as mutually exclusive statements? The first part, the defendant had been convicted of first degree murder. Second part, that he killed the victim after he committed that first degree murder. In other words, do both parts of that sentence have to be true in order for Issue One to be considered an aggravating circumstance?

The judge excused the jury for the evening and the next morning instructed the jury as follows:

> You asked this: "In other words, do both parts of the sentence have to be true in order for Issue One to be considered an aggravating circumstance?"
>
> The answer to that is yes, both parts have to be true in order for this issue to be an aggravating circumstance.
>
> The next matter that you asked up above was: "Does the word 'and' in that sentence indicate that the two parts of the sentence are dependent upon each other, or can they be considered as mutually exclusive statements?"
>
> All right. I instruct you that they are not dependent on each other, that they are mutually exclusive. Do you understand that?

Defendant admits that the judge correctly responded "yes" to whether "both parts have to be true in order for this issue to be an aggravating circumstance," but argues that by stating that the two parts are mutually exclusive, the jury was not required to find that defendant had been previously convicted of first-degree murder. We find no merit to this argument.

The obvious thrust of the jury's concern was whether both parts of the sentence had to be true in order to find the aggravating circumstance. The use of the term "mutually exclusive" in both the question and the judge's answer was inartful but on the critical question, the judge appropriately instructed the jury that it must find both parts to be true in order to find the aggravating circumstance. Any confusion was most likely caused by defense counsel's reading of the prior pattern jury instruction, and any misunderstanding was clarified by the judge's instructions and answers to the jury's questions. The jury knew that in order to find the aggravating circumstance, it was required to find that defendant had been previously convicted of first-degree murder. We find no merit in defendant's argument.

**[28]** Defendant next assigns error to the trial court's denial of his request to instruct the jury on defendant's parole eligibility. Defendant contends that because of his prior conviction and death sentence for murder in Buncombe County, if a life sentence were imposed in this case, he would be parole ineligible under North Carolina law. Defendant contends that during the sentencing proceeding, the State argued defendant's future dangerousness to support imposition of the death penalty; therefore, the jury should have been instructed that defendant would be parole ineligible if sentenced to life imprisonment.

This Court has consistently held that evidence regarding parole eligibility is not a relevant consideration in a capital sentencing proceeding. *See State v. Conaway*, 339 N.C. 487, 520, 453 S.E.2d 824, 845, *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995); *State v. Price*, 337 N.C. 756, 759, 448 S.E.2d 827, 829 (1994), *cert. denied*, 514 U.S. 1021, 131 L. Ed. 2d 224 (1995). Further, this Court has determined that the United States Supreme Court ruling in *Simmons v. South Carolina*, 512 U.S. 154, 129 L. Ed. 2d 133 (1994), does not alter our prior holdings on this issue and that "*Simmons* is limited to those situations where the alternative to a sentence of death is life imprisonment without the possibility of parole." *State v. Conaway*, 339 N.C. at 520, 453 S.E.2d at 845. In *Simmons* the Court found that a death sentence based in part on future dangerousness while concealing from the jury that life imprisonment meant life without possibility of parole amounted to a due process violation. *Simmons v. South Carolina*, 512 U.S. at 168-69, 129 L. Ed. 2d at 145-46.

We have reviewed the prosecutor's argument that defendant contends entitles him to relief, and in our view the prosecutor did not

argue future dangerousness. Rather, the prosecutor argued the evidence that defendant had committed three murders to show that defendant was a serial killer deserving of the death penalty. For this reason we conclude that the trial court's denial of defendant's request was not inconsistent with *Simmons*. Accordingly, this assignment of error is overruled.

[29] Defendant next contends that the trial court erred by allowing into evidence, over defendant's objection, postmortem photographs of two victims in other cases for which he had been previously convicted of first-degree murder. Defendant contends that the photographs lacked relevance and were unduly prejudicial.

As this Court has repeatedly held, "[a]ny evidence that the trial court 'deems relevant to sentenc[ing]' may be introduced in the sentencing proceeding." *State v. Heatwole*, 344 N.C. 1, 25, 473 S.E.2d 310, 322 (1996) (quoting *State v. Daughtry*, 340 N.C. 488, 517, 459 S.E.2d 747, 762 (1995), *cert. denied*, 516 U.S. 1079, 133 L. Ed. 2d 739 (1996)) (second alteration in original), *cert. denied,* —— U.S. ——, 137 L. Ed. 2d 339 (1997). The State must be allowed to present any competent evidence in support of the death penalty, *id.*, including "evidence of the circumstances surrounding a defendant's prior felony, notwithstanding the defendant's stipulation to the record of conviction, to support the existence of aggravating circumstances," *State v. Warren*, 347 N.C. at 316, 492 S.E.2d at 612.

In this case the postmortem photographs of Velma Gray, defendant's victim in South Carolina, and Jayme Hurley, defendant's victim in Asheville, North Carolina, illustrated the testimony of police detectives and supported the existence of the (e)(2) aggravating circumstance, that defendant had been previously convicted of another capital felony. *See* N.C.G.S. § 15A-2000(e)(2) (1988) (amended 1994). This evidence was relevant and competent evidence to illustrate the circumstances surrounding defendant's commission of the previous capital felony for which he had been convicted. *State v. Warren*, 347 N.C. at 316, 492 S.E.2d at 612.

Whether photographic evidence is more probative than prejudicial lies within the discretion of the trial court. *Id.* at 316, 492 S.E.2d at 612-13; *State v. Heatwole*, 344 N.C. at 25, 473 S.E.2d at 322; *State v. Hennis*, 323 N.C. at 285, 372 S.E.2d at 527. Defendant has failed to show that the trial court abused its discretion by admitting the postmortem photographs of defendant's prior murder victims. Defendant's contention is overruled.

Defendant next argues that the trial court erred by overruling his objections to portions of the prosecutor's closing argument during the capital sentencing proceeding. Defendant asserts that the prosecutor misstated the reasons underlying the aggravating circumstance and that the prosecutor called defendant a "coward," in violation of defendant's constitutional rights.

Generally, a prosecutor in a capital trial is given wide latitude during jury arguments. *State v. Hill*, 347 N.C. 275, 298, 493 S.E.2d 264, 277 (1997); *State v. Gregory*, 340 N.C. at 424, 459 S.E.2d at 672; *State v. Soyars*, 332 N.C. at 60, 418 S.E.2d at 487. The prosecutor may argue the law, the facts in evidence, and all reasonable inferences drawn therefrom. *State v. McCollum*, 334 N.C. at 223, 433 S.E.2d at 152; *State v. Syriani*, 333 N.C. at 398, 428 S.E.2d at 144.

[30] Defendant first contends that the trial court should not have overruled his objection to the following argument by the prosecutor:

And our courts have said that the better rule is to allow both sides to introduce evidence in support of aggravating and mitigating factors.

"This is so because the purpose for considering aggravating and mitigating circumstances is to engage in a character analysis of the defendant to ascertain whether the ultimate penalty is called for in his or her particular case. Propensity to commit violent crimes surely—["]

. . . [Objection overruled.]

. . . —"must be a valid consideration for the judge and the jury. It helps contribute to decisions as to sentence that will lead to uniform treatment and eliminate unfairness."

So it's a character analysis we're going to enter into here, and let's look at the mitigating factors that will be proposed, and a little bit of the character or lack of character of this defendant.

In this case the prosecutor quoted *State v. Taylor*, 304 N.C. 249, 280, 283 S.E.2d 761, 780 (1981), *cert. denied*, 463 U.S. 1213, 77 L. Ed. 2d 1398 (1983), in which this Court quoted with approval language from *Elledge v. State*, 346 So. 2d 998, 1001 (Fla. 1977). Defendant's argument that this language was not the law of North Carolina is without merit. This Court has repeatedly held that the State is entitled to present competent, relevant evidence pertaining to

the circumstances of the crime and the character of the criminal. *See State v. Rose*, 339 N.C. 172, 201, 451 S.E.2d 211, 228 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995). *State v. Oliver*, 309 N.C. 326, 360, 307 S.E.2d 304, 326 (1983). We find no compelling reason to depart from our prior holding; therefore, this assignment of error is overruled.

**[31]** Next, defendant objected to the prosecutor calling defendant a "coward" in the following context:

> The interesting thing is, in a way, he committed all these acts against women. Have you seen—have you seen any evidence of any type of aggression or assault by this man against another man? None. I contend to you he's a coward.
>
> . . . [Objection overruled.]
>
> . . . Under this evidence, he chokes and beats up—excuse me—he chokes and murders and kills women. Not men, women. And even then, women who have their back to him, women who are lying under him and can't do anything to him. He is a coward. I wouldn't want to face myself either. I'd try to hide myself from myself, like that doctor said he would. Not a thing about men in there, because he doesn't have the guts to do anything to a man, because a man might do something back to him. The man is a coward.

We have stated that it is improper to compare "criminal defendants to members of the animal kingdom." *State v. Richardson*, 342 N.C. 772, 793, 467 S.E.2d 685, 697, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 160 (1996). However, in *State v. Perkins*, 345 N.C. 254, 481 S.E.2d 25, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 64 (1997), the prosecutor called the defendant "sorry" and said that "describ[ing] him as a man is an affront to all of us." *Id.* at 286, 481 S.E.2d at 40. We held that the prosecutor did not label "defendant an 'animal' or refer to him by any other disparaging term." *Id.* at 287, 481 S.E.2d at 40; *cf. State v. Thompson*, 118 N.C. App. 33, 44, 454 S.E.2d 271, 277 (1995) (assuming that referring to defendant as a "coward" was not based upon any evidence introduced, it constituted error; but given the substantial evidence of defendant's guilt, it could only have been *de minimis*), *disc. rev. denied*, 340 N.C. 262, 456 S.E.2d 837 (1995). In this instance the prosecutor's comments were connected to the evidence which suggested that defendant preyed on those who were weaker than he. In context the use of the word "coward" to describe defend-

ant, while not complimentary, was not disparaging; and we conclude the trial court did not err by overruling defendant's objection.

**[32]** In his next assignment of error, defendant argues that the trial court should have intervened *ex mero motu* when the prosecutor communicated to the jury that defendant had previously been sentenced to death.

The standard of review for an alleged error in the prosecution's opening statement to which defendant failed to object is the same as for an unobjected-to statement in closing argument. "[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it." *State v. Johnson*, 298 N.C. at 369, 259 S.E.2d at 761. In determining whether the statement was grossly improper, we must examine the context in which it was given and the circumstances to which it refers. *State v. Tyler*, 346 N.C. 187, 205, 485 S.E.2d 599, 609, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 411 (1997); *State v. Alston*, 341 N.C. 198, 239, 461 S.E.2d 687, 709 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996).

The prosecutor stated:

We will show you evidence that he has been convicted of the capital or first degree murder of Jayme Hurley in Asheville, North Carolina. . . .

We will show you another aggravating factor in that he has been convicted of another crime of violence, in that he has been convicted of the non capital murder of a lady in South Carolina . . . .

We have previously held that it is improper for the jury to have knowledge that a capital defendant has been on death row in the same case. *State v. Britt*, 288 N.C. at 713, 220 S.E.2d at 292. Defendant asserts that the prosecutor's distinguishing one murder conviction as capital and the other as noncapital signaled to the jury that in the Asheville trial, defendant received a sentence of death. We disagree. The prosecutor accurately depicted the prior convictions. At the time of his opening statement, both parties and the judge believed that the South Carolina conviction would be submitted to the jury as an aggravating circumstance under N.C.G.S. § 15A-2000(e)(3) since the trial judge in the South Carolina case had stricken the sole aggravating factor,

thereby eliminating the possibility of defendant being sentenced to death. However, subsequent to opening statements defendant requested that both convictions be submitted under (e)(2). Further, the prosecutor never mentioned that defendant was sentenced to death as a result of the Asheville conviction, and merely referring to a conviction for "capital or first-degree murder" does not necessarily lead to the conclusion that a death sentence was imposed. After reviewing the prosecutor's statement contextually, we conclude the statement was not so grossly improper as to require the trial court to intervene *ex mero motu*.

[33] Next, defendant argues that the trial court erred by failing to declare a mistrial where defendant's witness testified that defendant was on death row. On direct examination, defendant's witness testified:

> He is doing quite as well as one could do on death row right now, and feels that that's where he belongs. He told me that he feels most comfortable when he's institutionalized, and in many ways he feels that he has been almost certain to end up there throughout his life, and feels he will spend the rest of his life in prison or be executed. He's quite willing to spend the rest of his life in prison.

In *Britt* during cross-examination the prosecutor referred to defendant's being on death row. This Court stated that "[c]ross-examination by which the prosecutor places before the jury inadmissible and prejudicial matter is highly improper and . . . [that] some transgressions are so gross and their effect so highly prejudicial that no curative instruction will suffice to remove the adverse impression from the minds of the jurors." *Id.* at 712-13, 220 S.E.2d at 292. However, we have declined to accept the *per se* rule that mere knowledge by the jurors that a previous jury had recommended a death sentence in the same case demonstrates prejudice to the defendant. *State v. Spruill*, 338 N.C. 612, 646, 452 S.E.2d 279, 297 (1994), *cert. denied*, 516 U.S. 834, 133 L. Ed. 2d 63 (1995); *State v. Green*, 336 N.C. 142, 165, 443 S.E.2d 14, 28, *cert. denied*, 513 U.S. 1046, 130 L. Ed. 2d 547 (1994); *State v. Simpson*, 331 N.C. 267, 271, 415 S.E.2d 351, 354 (1992).

In rejecting the defendant's argument in *Spruill* and distinguishing it from *Britt*, this Court noted that the prosecutor inadvertently mentioned death row only once, that the remark went unnoticed by defense counsel and was never brought to the jury's attention, that

defendant did not move for a mistrial, and that the jury could have inferred from other evidence that defendant had previously been sentenced to death. *State v. Spruill*, 338 N.C. at 645-46, 452 S.E.2d at 296-97. For the foregoing reasons, and despite the fact that defendant did move for a mistrial after the close of evidence, we likewise find the instant case distinguishable from *Britt*: The mention of death row was inadvertently made on direct examination of defendant's witness, was made only once, and was never brought to the attention of the jury. We cannot say that comments of defendant's witness constituted a transgression so gross or highly prejudicial that it alone warrants the granting of a mistrial.

## PRESERVATION ISSUES

Defendant raises six additional issues which he concedes have been decided contrary to his position previously by this Court: (i) the trial court erred in denying defendant's motion to strike the death penalty on the ground that it is unconstitutional; (ii) the trial court committed reversible constitutional error by excusing a juror without allowing defendant to examine her; (iii) the trial court erred by instructing the jury that it could find a nonstatutory mitigating circumstance and not give it any weight; (iv) the trial court committed reversible error by not instructing the jury that a mitigating circumstance is one which reduces defendant's moral culpability, rather than the offense; (v) the trial court erred in failing to instruct the jury that it must consider any other circumstance having mitigating value; and (vi) the trial court committed reversible constitutional error by not instructing the jury to consider any mitigating circumstance that any jury has determined exists.

Defendant raises these issues for purposes of permitting this Court to reexamine its prior holdings and also for the purpose of preserving them for any possible further judicial review. We have considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. These assignments of error are overruled.

## PROPORTIONALITY REVIEW

[34] Having found no prejudicial error in either the guilt-innocence or sentencing stages, it is now our duty to determine (i) whether the record supports the jury's findings of the aggravating circumstance upon which the court based its death sentence; (ii) whether the sentence was imposed under the influence of passion, prejudice, or any

other arbitrary factor; and (iii) whether the death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2).

Defendant was found guilty of first-degree murder under the theory of premeditation and deliberation. Following a capital sentencing proceeding, the jury found the one submitted aggravating circumstance that defendant had been previously convicted of another capital felony. N.C.G.S. § 15A-2000(e)(2). While two statutory mitigating circumstances were submitted to the jury, only one was found. The jury found the statutory mitigating circumstance that the murder was committed while defendant was under the influence of mental or emotional disturbance, N.C.G.S. § 15A-2000(f)(2), but declined to find the statutory mitigating circumstance that the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(6). Of the nineteen nonstatutory mitigating circumstances submitted, the jury found ten to exist.

After careful deliberation we conclude that the record fully supports the jury's finding of the aggravating circumstance submitted. Further, we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. We must now determine whether the sentence of death in this case is excessive or disproportionate.

We begin our proportionality review by comparing this case to those cases in which this Court has concluded that the death penalty was disproportionate. This Court has determined the death sentence was disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517; *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 177 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). This case is not substantially similar to any of the cases in which this Court has found that the death sentence was disproportionate.

This Court has never found the sentence of death disproportionate where the defendant has been convicted for the death of more than one person. *State v. McLaughlin*, 341 N.C. 426, 466, 462 S.E.2d

1, 23 (1995), *cert. denied*, 516 U.S. 1133, 133 L. Ed. 2d 879 (1996). In four of the seven disproportionate cases, the defendant had no prior criminal record. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517; *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713; *State v. Young*, 312 N.C. 669, 325 S.E.2d 181; *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163. In the other three cases, the defendant had no prior violent felony convictions. *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653; *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170; *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703. This defendant has been found guilty of multiple murders, all of women whom he strangled. In this particular case defendant carefully planned the murder and the method to conceal his crime by hiding the victim's body in the trunk of the victim's car, which defendant then left parked in a parking deck. On these facts we cannot say as a matter of law that the sentence of death is disproportionate when compared with other cases roughly similar with respect to the crime and the defendant.

For the foregoing reasons we conclude that defendant received a fair trial free from prejudicial error and that the sentence of death imposed by the trial court is not excessive or disproportionate.

NO ERROR.